IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION


KENDRICK C. STORY                                                    PLAINTIFF

            v.                      Civil No. 1:07-cv-01032

CALVIN KNIGHTON, Sheriff
Columbia County, Arkansas;
VICTOR REYNOLDS, Captain,
Columbia County Sheriff's Office;
and LT. JANET DELANEY,
Columbia County Sheriff's Office                                    DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

     The Plaintiff, Kendrick C. Story, filed this civil rights action pursuant to 42 U.S.C. § 1983.

He proceeds *pro se* and *in forma pauperis*.

     Plaintiff is currently incarcerated in the Arkansas Department of Correction.  The events at

issue in this lawsuit occurred when he was incarcerated at the Columbia County Detention Center.

Plaintiff contends his civil rights were violated in the following ways:  (1) excessive force was used

against him on July 5, 2005; (2) he was denied adequate medical care following the July 5th incident;

(3) he was retaliated against when he threatened to file a lawsuit about the July 5th incident; and (4)

he was placed in leg irons for approximately three weeks following the July 5th incident.

     Defendants filed a summary judgment motion (Doc. 14).  To assist Plaintiff in responding

to the summary judgment motion, a questionnaire was propounded (Doc. 19) by the Court.  Plaintiff

filed a timely response to the questionnaire (Doc. 21).  Plaintiff also filed a respond to Defendants'

statement of indisputable material facts (Doc. 23).  Pursuant to the provisions of 28 U.S.C. §

-1-

636(b)(1) and (3)(2007), the Honorable Harry F. Barnes, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation.

## 1. Background

Kendrick Story (hereinafter Story) was booked into the Columbia County Detention Center (CCDC) on March 18, 2005, on an aggravated robbery warrant. *Response* (Doc. 21)(hereinafter *Resp.*) at ¶ 1. He was incarcerated solely because of pending criminal charges. *Id.* at ¶ 3.

According to Defendants, on March 25, 2005, Story and the other detainees in pod 8 refused to get out of bed and clean the pod when instructed to do so by Corporal Willie Robinson (hereinafter Robinson). *Defendants' Exhibit* (hereinafter *Def't's Ex.*) 2 at page 1. Robinson came back a second time and instructed the inmates to get up and start cleaning. *Id.* He stated he would take their mattresses if they did not do as ordered. *Id.* Lt. Delaney instructed the deputies to pull the mattresses. *Id.* Defendants maintain the inmates started "rapping," "stomping," and doing lyrics and refusing to do as ordered. *Id.*

Story maintains Robinson "never came to me and asked me to do nothing of the kind but I can't tell nobody else what to do." *Resp.* at ¶ 4. If Robinson had come to him and said Kendrick Story get up and clean, Story says he would have done it. *Id.* at ¶ 5. Story also states he did not start rapping or stomping but has no control over what anyone else did. *Id.* at ¶ 6. He states he was simply in the pod. *Id.*

As a result of their conduct, Defendants assert Story and four other inmates were put on administrative segregation. *Defts' Ex.* 2 at page 2. Story also disagrees he was placed in administrative segregation. *Resp.* at ¶ 7. Instead, he states Defendants simply took everyone's mattresses. *Id.*

According to Defendants, on March 28th Story's administrative segregation was reviewed. *Defts' Ex.* 2 at page 3.  Due to his abusive behavior towards jailers the decision was made to leave him in administrative segregation.  *Id.*  A second review of Story's administrative segregation was performed.  *Id.* at page 4.  He admitted he was still violating the rules of the jail.  *Id.*  The decision was made that he should remain in segregation.  *Id.*  On March 31st Story's administrative segregation was again reviewed.  *Id.* at page 5.  He apologized for his behavior and was taken off segregation.  *Id.*

On June 30th after lights were out Defendants maintain the detainees in pod 8 continued to be extremely loud.  *Defts' Ex.* 2 at page 6.  Delaney asked all the inmates to hold the noise down. *Id.*  A vulgarity was used in response and everyone continued to be loud.  *Id.*  Delaney stated if the inmates continued the noise the television privileges would be lost.  *Id.*  The noise continued and the television was removed.  *Id.*  The detainees then got really loud.  *Id.*  Delaney said that commissary privileges would be lost if the inmates continued yelling.  *Id.*  The commissary privileges were taken and when the yelling continued Delaney called for assistance.  *Id.*  Once the other deputies arrived and the hall light was turned on, everyone finally quieted down.  *Id.*

Story asserts Delaney never asked him to do anything.  *Resp.* at ¶ 11.  He states he cannot tell another man what to do.  *Id.* at ¶ 12.  He maintains he was not saying anything or doing anything but the television was taken out of the pod.  *Id.*

On July 3rd detainees in pod 8 attempted an escape.  *Defts' Ex.* 2 at pages 8-9.  The detainees in pod 8 included Story, James Smith, Damon Jones, Jamie Jacobs, Donnie Gibson, James Darrough, David Cornelius, Dennis Cooper, Lester Brown, and Robert Beal.  *Id.*  A lock was broken on a door in the ceiling and an attempt made to leave.  *Id.*  The pod 8 detainees were moved to pod 4.  *Id.  See*

-3-

*also Resp.* at ¶ 16.  On July 4th the detainees were not given yard call because of the security risk and because there were only two rookie jailers working on the shift when yard call was normally done.  *Defts' Ex.* 2 at page 4.

On July 5th, Story maintains he and the other inmates woke up to physical force being used by Sheriff Calvin Knighton and Captain Victor Reynolds.  *Resp.* at ¶ 18.  He states he felt hard kicks on his legs moving up towards his stomach.  *Id.*  Story indicates he was kicked out of his bed trying to get away from Sheriff Knighton.  *Id.*  Once out of his bed, Story maintains Sheriff Knighton and Reynolds still tried to be physical with him.  *Id.*

Story maintains he received injuries to his right leg and stomach area.  *Resp.* at ¶ 19.  He states he experienced sharp pains in his stomach and had a hard time walking due to being assaulted by Sheriff Knighton.  *Id.*  Story indicates he was seen by the nurse but told there was nothing wrong with him.  *Id.*  Story asked to be seen by the doctor but his request was denied.  *Id.*  He maintains he suffered from the injuries for about three months.  *Id.*

The same day, July 5, 2005, Story states after he told the defendants that James Smith, Damon Jones, and he were going to file a lawsuit, they were put in lock-down and leg irons.  *Resp.* at ¶ 20.  Story states he never got a disciplinary report and he is not sure when he got off lock-down.  *Id.*  Because he was on lock-down, he states he was denied the proper paperwork "like getting grievances so" he was unable to "do it while I was in jail there in Columbia County."  *Id.*

However, by July 7th Story had access to a grievance form because he submitted one asking for medical treatment for his ankles.  *Resp.* at ¶ 21.  He stated his ankles were swollen and he was in a lot of pain.  *Id.*  He stated the nurse said she could not take "them off" him because the Sheriff put "them on" him.  *Id.*

-4-

Story indicates he was referring to the leg irons that he was placed in on July 5th.  *Resp.* at ¶ 22.  He indicates they were left on twenty-four hours a day with the exception of the approximately five minutes the leg irons were taken off when he was allowed to shower.  *Id.*  He indicates it was hard to move around in the leg irons.  *Id.*  He believes he was in leg irons for about three weeks straight.  *Id.*  He indicates his ankles became badly swollen and very painful.  *Id.*

Story was charged with attempted escape from a correctional facility and criminal mischief as a result of the events of July 3rd and given a court date of August 16th.  *Resp.* at ¶ 24.  David Talley was appointed as his counsel.  *Id.*  Story maintains the charge was eventually dismissed because they had no proof of the alleged escape.  *Id.* at ¶ 25.

According to Defendants, on August 31st while Robinson was serving lunch detainees from pod 8 were beating on the window.  *Defts' Ex.* 2 at page 10.  Robinson identified the two detainees causing the problem as Story and Paschal.  *Id.*  Robinson asked them to stop.  *Id.*  Story became even more belligerent when Robinson asked him to be quiet.  *Id.*  Robinson asked for assistance and Sheriff Knighton and Sgt. Martin responded.  *Id.*  Story and Paschal were put in administrative segregation.  *Id.*

According to Story, he did not beat on any windows at anytime.  *Resp.* at ¶ 26.  Story states he is not responsible for what someone else does.  *Id.*  He also denies becoming belligerent.  *Id.* at ¶ 27.  Finally, he denies being put in administrative segregation.  *Id.* at ¶ 28.

According to Sheriff Knighton, county policy requires that when an inmate is caught attempting an escape an investigation be started immediately and that action be taken to alleviate the risk of present and future escape.  *Defts' Ex.* 4 at ¶ 3.  Action taken can include placing the inmate

in leg irons until the attempted manner of escape has been determined and the safety and security of the jail has been fully secured. *Id.*

Sheriff Knighton maintains the use of leg irons is intended to prevent potential escapes and maintain security within the facility. *Defts' Ex.* 4 at ¶ 4. Inmates caught attempting to escape are kept in leg irons for the safety and security of the facility until the emergency created by the attempted escape has been successfully dealt with. *Id.*

Sheriff Knighton made the decision to place Story, and other inmates attempting to escape, in leg irons after the entrance to the ceiling in pod 8 was found forced open and it was determined the inmates had attempted to escape through the ceiling. *Defts' Ex.* 4 at ¶ 5. Sheriff Knighton had also learned that inmates had contacted individuals outside the facility to pick up those who successfully got out of the jail. *Id.* Sheriff Knighton asserts he had Story's leg irons removed after he was confident that the attempted escape route had been secured and the safety and security of the jail was no longer compromised. *Id.*

Story maintains he was not caught escaping and if he had been he would have been found guilty of the escape charges. *Resp.* at ¶ 30. Further, once he was locked down in a one man cell Story asserts his leg irons should have been removed. *Id.* at ¶ 31. Story also points out that only three out of eight inmates from pod 8 were placed in leg irons. *Id.* at ¶ 33. He states he did not call or write anyone outside the jail. *Id.* at ¶ 34. Finally, he states it did not take almost a month to secure the so called escape route. *Id.* at ¶ 35.

Story concedes he submitted no requests or grievances about excessive force being used against him by any of the Defendants on July 5, 2005. *Resp.* at ¶ 36. He indicates the reason for this is because he was still in shock about it happening to him. *Id.* He states he did make it known in

court in front of the judge and his family. *Id.* He states he was locked up shortly after. *Id.* He indicated he didn't know he had to have "them" for his lawsuit. *Id.* His July 7th grievance mentions no injuries from any use of excessive force. *Id.* at ¶ 39. It only mentions swollen ankles since the Sheriff "put them on me." *Id.*

He submitted no grievances about being denied the right to go to the hospital or being denied medical care after force was used against him on July 5th. *Resp.* at ¶ 37. He submitted no grievances about being placed on lock-down for trying to file a lawsuit. *Id.* at ¶ 38.

Story was sentenced to a term of imprisonment at the Arkansas Department of Correction (ADC) on October 14, 2005. *Resp.* at ¶ 41. He was transferred to the ADC on October 19th. *Id.* at ¶ 40.

## 2. Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.,* 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank,* 165 F.3d at 607 (*citing Anderson*

*v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).  "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### 3. Discussion

Defendants have now moved for summary judgment on all claims asserted by Story.  With respect to his excessive force claims, denial of medical care claim, and his First Amendment retaliation claim, Defendants contend they are entitled to judgment as a matter of law because Story failed to exhaust his administrative remedies.  In his initial response to the summary judgment motion (Doc. 21), Story concedes he did not exhaust his remedies on any of these claims, however, he contends he was in shock from the incident, did not know he had to exhaust his remedies, and did not have access to grievance forms for a period of time.  In his response to Defendants' statement of indisputable material facts (Doc. 23), he contradicts his earlier statements and maintains he submitted grievances on these issues.  He asserts he just never received the grievances back and when he asked for more grievance forms his requests were refused.

With respect to the use of the leg irons, Defendants maintain the decision to place Story in leg irons was reasonably related to a legitimate governmental objective.  They therefore maintain they are entitled to judgment as a matter of law.  Story, however, maintains there was no proof he was involved in the escape attempt.  Additionally, he argues that since he was moved to a one man cell there was no reason to keep him in leg irons for three weeks.

#### *Failure to Exhaust Administrative Remedies*

As amended by the Prison Litigation Reform Act (PLRA),  42 U.S.C. § 1997e(a) mandates exhaustion of available administrative remedies before an inmate files suit. Section 1997e(a) provides:

-8-

"[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  The Supreme Court in *Booth v. Churner*, 532 U.S. 731, 738-39, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001) held that "exhaustion is required where administrative remedies are available even if the available administrative remedies do not provide the precise, or full, relief sought."  *Walker v. Maschner*, 270 F.3d 573, 577 (8th Cir. 2001).

In Story's first response to the summary judgment motion at ¶ 36, ¶ 37, and  ¶ 38,  he concedes he submitted no requests or grievances addressing the use of excessive force against him on July 5, 2005, the denial of medical care following the July 5th incident, and being placed on lock-down for trying to file a lawsuit.  He also concedes that his July 7th grievance mentions no injuries from any use of excessive force, ¶ 39.  His summary judgment response contains the following declaration immediately above his signature:  "I declare under penalty of perjury that the foregoing is true and correct."

In his response to Defendants' statement of indisputable material facts filed on July 11, 2008 (Doc. 23), Story at ¶ 19 says "[s]everal grievances were submitted addressing these issues that I never received back, when I asked for more grievance's forms they refused to give them to me.  The PLRA requires I exhaust all available administrative remedies.  No forms means no method to exhaust and unresponded to grievances are deemed exhausted."  Story cannot create a genuine issue of material fact by contradicting his initial response to the summary judgment motion.  *See Roberts v. Park Nicollet Health Services*, 528 F.3d 1123, 1126 (8th Cir. 2008)(pregnancy discrimination claims–conflicting evidence of when Roberts first notified supervisor of her pregnancy–"For purposes of summary judgment, the conflict in these statements must be resolved in favor of Roberts,

unless the inconsistency represents only an effort by the plaintiff to manufacture a sham issue of fact."). It was only after Story apparently realized that his admission would result in the dismissal of three of his claims that he filed a second document claiming to have submitted grievances on these issues.

I agree with Defendants that Story's excessive force, denial of medical care, and retaliation claims cannot proceed because he did not exhaust his administrative remedies. *See Jones v. Bock*, 549 U.S. 199, ___, 127 S. Ct. 910, 918-23, 166 L. Ed. 2d 798 (2007)(unexhausted claims cannot be brought in court or considered; failure to exhaust is affirmative defense). I find unpersuasive Story's argument that he did not have assess to, or was denied, grievance forms while he was on lock-down following the July 5th incident. He clearly had access to grievance forms. He submitted a grievance form on July 7th only two days after the incident. This grievance only mentions swollen ankles since the leg irons had been put on him. I also find that his response to Defendants' statement of indisputable material facts, indicating he did file grievances on these issues, was merely an effort to "to manufacture a sham issue of fact."

### Use of Bodily Restraints (Leg Irons)

"[L]iberty from bodily restraint always has been recognized as the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Youngberg v. Romeo*, 457 U.S. 307, 316, 102 S. Ct. 2452, 73 L. Ed. 2d 28 (1982). "The interest survives a criminal conviction and incarceration, pretrial detention, or involuntary civil commitment. Of course, a detainee's liberty interest in freedom from restraint is highly qualified and must be balanced against the state's reasons for restraining that liberty." *Benjamin v. Fraser*, 264 F.3d 175, 188 (2nd Cir. 2001)(citations omitted).

-10-

In this case, Story was booked on pending criminal charges at the time he was put in leg irons and was therefore a pre-trial detainee. *Resp.* at ¶ 1 and ¶ 41 (conviction on October 14, 2005). The law is clear that a pretrial detainee cannot be punished. *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979). "However, not every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996). *See also May v. Sheahan*, 226 F.3d 876, 884 (7th Cir. 2000)("The Due Process Clause of the Fourteenth Amendment prohibits the use of bodily restraints in a manner that served to punish a pre-trial detainee.").

"Once the Government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention." *Bell*, 441 U.S. at 537. In determining whether a particular restriction constitutes a permissible restriction or amounts to impermissible punishment, the court first asks "whether the restriction is based upon an express intent to inflict punishment." *Valdez v. Rosenbaum*, 302 F.3d 1039, 1045 (9th Cir. 2002)(citations omitted). If "there is no indication of such an express intent," the court next considers "whether punitive intent can be inferred from the nature of the restriction." *Valdez*, 302 F.3d 1045.

In this regard, the Supreme Court in *Bell* held that "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Bell*, 441 U.S. at 539. "An action may be reasonably related to a legitimate governmental purpose if an alternative purpose to which the act may rationally be connected is assignable for it and the action does not appear excessive in relation to the alternative

purpose assigned." *Robles v. Prince George's County, Maryland*, 302 F.3d 262, 269 (4th Cir. 2002)(internal citations and punctuation omitted).

> A reasonable relationship between the governmental interest and the challenged restriction does not require an "exact fit," nor does it require showing a "least restrictive alternative." Otherwise, every administrative judgment would be subject to the possibility that some court somewhere would conclude that it had a less restrictive way of solving the problem at hand. Moreover, it does not matter whether we agree with the defendants or whether the policy in fact advances the jail's legitimate interests. The only question that we must answer is whether the defendants' judgment was rational, that is, whether the defendants might reasonably have thought that the policy would advance its interests.

*Valdez*, 302 F.3d at 1046.

"Conversely, if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees." *Terry v. Hill*, 232 F. Supp. 2d 934, 943 (E.D. Ark. 2002). However, "[c]ourts must be mindful that these inquiries spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility." *Id.* (citations omitted). Furthermore, there is a *de minimis* level of imposition with which the Constitution is not concerned." *Smith*, 87 F.3d at 268.

We begin with an examination of the policy of the CCDC with respect to the use of the leg irons. *Defendants' Exhibit* 4. According to Sheriff Knighton, leg irons are used on inmates who have attempted to escape to prevent potential escapes and maintain security. *Id.* at ¶ 4. The leg irons are used for the safety and security of the facility until the emergency created by the attempted escape has been successfully dealt with. *Id.* Sheriff Knighton asserts he made the decision to place the leg irons on Story when the entrance to the ceiling in pod 8 was found forced open and it was

-12-

learned inmates attempted to escape and had contacted individuals on the outside to pick them up. *Id.* at ¶ 5. Sheriff Knighton made the decision to remove the leg irons when he was "confident that the attempted escape route had been secured and the safety and security of the jail facility was no longer compromised." *Id.*

Sheriff Knighton does not give the date when the leg irons were removed from Story. Story maintains the leg irons remained on him at least three weeks.

I believe there are genuine issues of fact that preclude summary judgment on this claim. Although I believe the decision to place Story in leg irons was reasonably related to a legitimate governmental objective, there is insufficient evidence in the record to establish how long Story in fact remained in the leg irons and how long the "emergency" situation lasted at the facility. Sheriff Knighton states he made the decision to remove Story from the leg irons when he was confident the facility was no longer compromised but does not enlighten the court as to when this occurred or what steps, if any, were undertaken at the facility to ensure its safety before Story was released.

## 4.  Conclusion

For the reasons stated, I  recommend that the Defendants' motion for summary judgment (Doc. 14) be granted in part and denied in part.  Specially, I recommend that Defendants be granted summary judgment on the following claims:  Plaintiff's excessive force claim; his denial of medical care claim; and his retaliation claim.  I further recommend that Defendants' be denied summary judgment on Plaintiff's claim that his rights were violated when he remained in leg irons for an extended period of time.

Finally, I recommend that Defendants be ordered to file a supplemental motion for summary judgment on Plaintiff's claim that his rights were violated when he was placed in leg irons for an

extended period of time.  In the supplemental motion, Defendants should specifically address, among other things:  the date the Plaintiff was placed in and removed for the leg irons; the amount of time each day Plaintiff was in leg irons; whether Plaintiff was removed from the leg irons each day for exercise, showers, etc.; how much movement the Plaintiff had with the leg irons; what was being done to make sure the jail was secure; what evidence there was that Plaintiff was involved in the attempted escape; and what factors the Sheriff considered in determining the escape risk had passed.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this 21st **day of July 2008.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE