IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

KENDRICK C. STORY PLAINTIFF

v. Civil No. 1:07-cv-01032

CALVIN KNIGHTON, Sheriff
Columbia County, Arkansas;
VICTOR REYNOLDS, Captain,
Columbia County Sheriff's Office;
and LT. JANET DELANEY,
Columbia County Sheriff's Office DEFENDANTS

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

The Plaintiff, Kendrick C. Story (hereinafter Story), filed this civil rights action pursuant to 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis*.

Story is currently incarcerated in the Arkansas Department of Correction. The events at issue in this lawsuit occurred when he was incarcerated at the Columbia County Detention Center. Story contends his constitutional rights were violated by the use of bodily restraints. Specifically, he maintains he was left in leg irons for an extended period of time. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2007), the Honorable Harry F. Barnes, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation. On May 19, 2009, an evidentiary hearing was held. At the conclusion of the hearing, the case was taken under advisement pending preparation of this report and recommendation.

## 1. Background & Evidence Presented

Story was booked into the Columbia County Detention Center (CCDC) on March 18, 2005 on an aggravated robbery warrant and a probation violation warrant. *Defendants' Exhibit* 1. He was sentenced to a term of imprisonment at the Arkansas Department of Correction (ADC) on October 14, 2005. He was transferred to the ADC on October 19th. *Id.*

On July 3, 2005, a padlocked door in the ceiling of pod 8 was torn down by the detainees. *Plaintiff's Exhibit* 1. Defendants believed one or more of the detainees were attempting to escape. *Plaintiff's Exhibit* 2. Story was one of the detainees housed in pod 8 on July 5th. *Plaintiff's Exhibit* 1.

At the evidentiary hearing, I heard the testimony of the following witnesses: (1) Lester Brown; (2) Sheriff Calvin Knighton; (3) Victor M. Reynolds; (4) Kendrick Story; and (5) Janet Delaney. I had also issued subpoenas for Damon Jones and Dennis Cooper. However, it was determined that the subpoenas were not served on these witnesses prior to the evidentiary hearing. At the conclusion of the presentation of evidence, Story indicated he did not believe it was necessary to hold a second or supplemental hearing for the purposes of obtaining the testimony of these witnesses. He agreed to record was complete without the testimony of these individuals.

For purposes of discussion, I will summarize in the first person the testimony given at the evidentiary hearing.

***Lester Brown***

I am currently incarcerated in the ADC, Delta Regional Unit. I recall the Story being put in leg irons. It happened on July 5, 2005. We were in 8 pod. Calvin Knighton came in there and put Story in leg irons and handcuffs. He left Story in there until the end of the month.

The jailers and the nurse didn't check him every night. They didn't check him every thirty minutes. He went to yard call but he was in restraints.

***Calvin Knighton***

I'm the Sheriff of Columbia County. The attempted escape was investigated by Truman Young. Inmate Robert Beal gave Young a statement. I took Young's recommendation. I didn't investigate it myself.

The investigator went up into the ceiling. He came back with the information that Story was one of the inmates who went up in the ceiling.

I'm not sure I have anything in writing showing Story was taken out of leg irons for thirty to forty-five minutes everyday but it was done. There is evidently no video recording for July of 2005.

We didn't catch Story trying to escape but according to the investigation he was one of the inmates trying to escape. On July 4th the leg irons were put on. On July 7th the leg irons were taken off.

Plaintiff's Exhibit 3 is a jail shift report. It indicates the leg irons were put on Story on July 5th. In my affidavit, Plaintiff's Exhibit 6, I stated Story was put in leg irons on July 4th. At this point, I don't know if he was put in the leg irons on July 4th or July 5th.

With respect to the date the leg irons were taken off, my affidavit, Plaintiff's Exhibit 6 at ¶ 14, says the leg irons were removed on July 7th. Plaintiff's Exhibit 5, a jail shift report, says the leg irons were taken off on July 11th. To the best of my knowledge, the leg irons were removed on July 7th. I don't know where the jail log date of July 11th came from.

There is no document showing Story received more than one shower.  Plaintiff's Exhibit 4, a jail shift report for July 6th, indicates Story had one shower.  This was just for one day.  I wasn't back in the jail everyday.  I'm sure Story was given an opportunity to shower everyday.

I made the statement contained in paragraph 12 of my affidavit, Plaintiff's Exhibit 6. ("I determined the escape risk had passed once the lock and key had been replaced, the access door had been welded shut, the metal parts from the pod #8 television stand were removed from pod #8, and an investigation of the ceiling revealed that there was no way to access the outside of the facility from inside the ceiling.").  The security of the jail was my number one priority.  I had to put leg irons on Story even though he was in a one man cell.

Erika Meeks prepared the incident report dated July 3, 2005.  *Plaintiff's Exhibit* 1.  At the time, she did not name Story as being involved in the destruction of property and tearing down of the padlocked door out of the ceiling.  *Id.*  When I said in my affidavit that the "evidence that Plaintiff was involved in the attempted escape was submitted by Erica Meeks in her July 3, 2005 incident report, I'm referring to the report submitted as Plaintiff's Exhibit 1.  She described what occurred and listed Story as one of the detainees in the pod.  Some of the other detainees were also charged with escape.  I turned the investigation over to Young.

I think I came into the jail the next morning, July 4th.  I'm not sure if the officers heard any excessive beating the day before.  I believe David Aldridge fixed the ceiling.  Although Plaintiff's Exhibit 9 indicates J. Williams and D. Bailey fixed the ceiling on July 6th, they only fixed it temporarily.  David Aldridge welded it later.  I don't know the date.  There is no invoice or bill for the work.  He is a deputy.  The welding was not done on July 5th.

***Captain Victor Reynolds***

I'm retired now. I was the jail administrator at the CCDC in July of 2005.

Story was charged with escape and criminal mischief as a result of the events of July 3, 2005. I don't know why the criminal information, Plaintiff's Exhibit 11, does not have a file mark on it. I don't know why the certification on the docket sheet indicates a date of January 8, 2009. *Plaintiff's Exhibit* 12. The charges were filed against Story on July 7, 2005. *Id.* It was up to the prosecuting attorney whether he proceeded with the case or not.

***Kendrick Story***

I'm currently in the ADC at the Randall L. Williams Correctional Facility. I'm in jail on a theft of property charge. I was convicted in June of 2007.

I was in pod 8 when James E. Smith advised Officer Meeks that the door was broken. Erika Meeks and several other officers came back and escorted us to pod 4. There were no problems. The next day Sheriff Knighton came back. Smith, Damon Jones and I were put in leg irons on July 5th. *See also Plaintiff's Exhibit* 3.

The charges were filed on July 5th. I appeared in court on July 5th and plead not guilty. When I went to court on the escape and criminal mischief charges, the Judge told them he would give them thirty days to come up with some evidence. I called David Talley. He was supposed to be my court appointed attorney. He told me the charges were dropped. *See Plaintiff's Exhibit* 12 (charges nol prossed on July 24, 2005).

I was put in a one man cell. I came off the lock down on July 26th. The leg irons were removed the day before. I was placed back in pod 8. I was in the same pod with the same people.

I submitted Plaintiff's Exhibit 5 that says I was taken out of shackles on July 11th to show it contradicts or conflicts with the Sheriff's affidavit. My leg irons were not taken off until July 25th.

They had nothing to show they had a lawful reason to put me in leg irons. I was only given one shower. I was not monitored by the nurse. I don't' remember Delaney monitoring my ankles. Davis monitored my ankles and said they were swollen but there was nothing he could do.

I was punished based on allegations without any proof just based on what someone said. Robert Beal allegedly gave an oral statement to Young. That is the reason for the conclusion that I was involved in the escape.

I haven't seen any document showing what Beal said. I only saw a document saying what Young said Beal said. *Defendants' Exhibit* 4. I don't have anything in writing from Beal. I don't know what day Beal gave his statement.

The incident report written by Meeks, Plaintiff's Exhibit 1, mentions damage in pod #8. It was reasonable to take the detainees out of the cell. We were moved out of pod 8 to pod 4 on July 3rd. I agree once the officers saw the opening in the ceiling it was reasonable for them to keep investigating.

I had nothing to do with the alleged escape or destruction of property. They had nothing to go on.

Once we were moved to pod 4, the security problem was eliminated. There was no damage in pod 4 and no risk of escape. There was no need for any other restraints. It was more punishment than anything else. I tried to explain it to Truman Young. I was kept in restraints for an extended period of time. I did go to yard call but I was still in restraints.

I had real bad swollen feet and ankles. They were making me sleep in them. When I did get the leg irons off, my feet remained swollen for several days. The nurse said there was nothing she could do because the Sheriff put me in the restraints.

On July 8th, Delaney replied that she had spoken to the nurse and the nurse didn't say my feet were swollen. This shows the restraints were on past the 7th when the Sheriff contends they were removed.

I was clearly punished for something I didn't do. Being placed in a one man cell was punishment enough.

***Lieutenant Janet Delaney***

I'm currently a lieutenant at the CCDC. In July of 2005 I was employed there as a jailer. I remember the events of July 2005.

I recall the damage to the trap door in pod 8 and that we thought it lead to the outside. The investigation was conducted by the jail administrator, Captain Truman Young. The investigation was apart from the day to day operation of the jail.

For the safety and security of the jail, the detainees were moved. Story and two others, Smith, and Jones, were identified as having been involved in the escape attempt. They were placed in leg irons to maintain order and security. This was not done immediately when the inmates were moved to the other pod. When the Sheriff was notified of the incident, he went to the jail and determined what to do.

One log says the leg irons were removed on July 11th. I would stand by the jailer's log as to when the leg irons were removed. I typed the Sheriff's affidavit. I may have just made an error when I put the date July 7th in the affidavit. Story got copies of all jail logs.

The Sheriff gave a direct order if shackles were placed on an inmate to make sure they were not too tight and do not cause injury. The shackles are just used to maintain order and security.

The jail opened in 2001. The type of configuration is the same in all pods. We were amazed they could break the lock off the trap door. It was about as big around as my thumb. They used part of the metal television stand to pry the lock. If a detainee got up in the attic, they could gain access to the outside and to other areas of the jail.

The Sheriff ordered me to make sure the shackles were maintained loosely and removed to let the detainee shower. The shackles were brought to control when the detainees were allowed to shower. Sometimes everything does not get logged. The detainees wear socks about 3/4 inches high on the ankle. The shackles fit below the sock. The leg shackles function the same as handcuffs. They double lock so they cannot continue to tighten.

Story is wearing leg shackles today. The shackles are about the same as those he is wearing today. The shackles were purchased through a company.

I didn't participate in the investigation. The Sheriff's orders were carried out. Story's ankles were checked everyday. I don't have any documentation to show that Story's ankles were checked everyday. If there were any problems, an incident report would have been prepared.

Plaintiff's Exhibit 9 indicates Story was out to see the nurse on July 6th. His ankles were never swollen. Plaintiff's Exhibit 13 is a grievance submitted by Story. I signed it on July 7th at 0930 or 9:30 a.m. indicating I had received it. *Id.* I responded to it on July 8th indicating I had talked to the nurse and in my mind there were no problems with his ankles.

**2. Discussion**

"[L]iberty from bodily restraint always has been recognized as the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Youngberg v. Romeo*, 457 U.S. 307, 316, 102 S. Ct. 2452, 73 L. Ed. 2d 28 (1982). "The interest survives a criminal conviction and incarceration, pretrial detention, or involuntary civil commitment. Of course, a detainee's liberty interest in freedom from restraint is highly qualified and must be balanced against the state's reasons for restraining that liberty." *Benjamin v. Fraser*, 264 F.3d 175, 188 (2nd Cir. 2001)(citations omitted).

In this case, Story was booked on pending criminal charges at the time he was put in leg irons and was therefore a pretrial detainee. The law is clear that a pretrial detainee cannot be punished. *See Bell v. Wolfish*, 441 U.S. 520, 535, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979). "However, not every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996). *See also May v. Sheahan*, 226 F.3d 876, 884 (7th Cir. 2000)("The Due Process Clause of the Fourteenth Amendment prohibits the use of bodily restraints in a manner that served to punish a pre-trial detainee.").

"Once the Government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention." *Bell*, 441 U.S. at 537. In determining whether a particular restriction constitutes a permissible restriction or amounts to impermissible punishment, the court first asks "whether the restriction is based upon an express intent to inflict punishment." *Valdez v. Rosenbaum*, 302 F.3d 1039, 1045 (9th Cir. 2002)(citations omitted). If "there is no indication of such an express intent," the court next

considers "whether punitive intent can be inferred from the nature of the restriction." *Valdez*, 302 F.3d at 1045.

In this regard, the Supreme Court in *Bell* held that "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Bell*, 441 U.S. at 539. "An action may be reasonably related to a legitimate governmental purpose if an alternative purpose to which the act may rationally be connected is assignable for it and the action does not appear excessive in relation to the alternative purpose assigned." *Robles v. Prince George's County, Maryland*, 302 F.3d 262, 269 (4th Cir. 2002)(internal citations and punctuation omitted).

> A reasonable relationship between the governmental interest and the challenged restriction does not require an "exact fit," nor does it require showing a "least restrictive alternative." Otherwise, every administrative judgment would be subject to the possibility that some court somewhere would conclude that it had a less restrictive way of solving the problem at hand. Moreover, it does not matter whether we agree with the defendants or whether the policy in fact advances the jail's legitimate interests. The only question that we must answer is whether the defendants' judgment was rational, that is, whether the defendants might reasonably have thought that the policy would advance its interests.

*Valdez*, 302 F.3d at 1046. *See also Hanks v. Prachar*, 457 F.3d 774, 775 (8th Cir. 2006)("Incidents of property destruction are arguably constitutionally valid reasons for restraining Hanks for short periods when he was already locked down, to prevent further damage. But long periods of in-cell restraints would not be justified by such property destruction, by staff's fears of Hanks due to his mere threats, or by Hanks's improper and excessive phone calls.").

"Conversely, if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees." *Terry v. Hill*, 232 F. Supp.

2d 934, 943 (E.D. Ark. 2002). However, "[c]ourts must be mindful that these inquiries spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility." *Id.* (citations omitted). Furthermore, there is a *de minimis* level of imposition with which the Constitution is not concerned." *Smith*, 87 F.3d at 268.

According to the affidavit of Sheriff Knighton, the use of leg irons on inmates who have attempted to escape "is intended to prevent potential escapes and maintain security within the facility." *Defendants' Exhibit* 4 at ¶ 4. Sheriff Knighton indicates "[i]nmates caught attempting to escape are kept in leg irons for the safety and security of the facility until the emergency created by the attempted escape has been successfully dealt with." *Id.*

Sheriff Knighton testified that Story was placed in leg irons on his orders on July 4th. Other records indicate, and Story agrees, that the leg irons were actually placed on him on July 5th. Sheriff Knighton's decision was based on the incident report of Meeks, Plaintiff's Exhibit 1, and the investigation performed by Young, Defendants' Exhibit 4. By this time, Story and the other inmates from pod 8 had been in pod 4 since the July 3rd incident and as far as the record indicates there had been no further problems with Story or any of the other inmates. There is no indication that there was any continued threat to the safety or security of the jail.

Sheriff Knighton testified the investigation was carried out by Young. Young's report is dated July 5, 2005. *Defendants' Exhibit* 4.

On July 6th the ceiling in pod 8 was repaired by two inmates. *Plaintiff's Exhibit* 9. Although Sheriff Knighton testified the ceiling was only temporarily repaired by the inmates and was later

repaired by being welded by a deputy, Sheriff Knighton could not recall when this second repair occurred and had no documentation indicating when it occurred.

While the record indicates all pods were the same configuration, there is no evidence any attempt was made to tamper with the lock on the ceiling door in pod 4.  Further, between July 3rd and July 5th, Defendants had undertaken no efforts to separate the inmates who had been housed together in pod 8 when the incident occurred.  Additionally, Sheriff Knighton asserts in his affidavit that Young's investigation revealed there was no access to the outside through the door in the ceiling of pod 8.  *Plaintiff's Exhibit* 6 at ¶ 12.

While Sheriff Knighton's affidavit indicates Story's leg irons were removed on July 7th, Plaintiff's Exhibit 6 at ¶ 14, and he so testified, his testimony is contradicted by the CCDC records. Specifically, the jail shift report indicates the leg irons were not removed until July 11th, Plaintiff's Exhibit 5.  Delaney also testified she would go by the date on the jail shift report rather than the July 7th date.

Story testified the leg irons were not removed until July 25th; the day after the escape and criminal mischief charges were dismissed. *Plaintiff's Exhibit* 12. He indicated he was removed from lock down on July 26th.  Brown also testified Story remained in leg irons until the end of the month.

Although there may have initially been legitimate security interests in taking additional measures to ensure the safety and security of the facility, I believe the evidence establishes that by the time the decision was made to place Story in leg irons the danger had passed.  By July 5th all inmates from pod 8 had been in a different pod for nearly two days, no further attempts at escape had been made, no additional problems with the inmates were noted or are part of the record, and the investigation revealed there was no access to the outside through the ceiling door.  When the threat

to the safety and security of the facility ended, taking additional measures against Story by placing him in leg irons and moving him to a one man cell amount to an exaggerated response to the situation and support the conclusion that the conditions were imposed to punish Story in violation of his Fourteenth Amendment rights. *Bell*, 441 U.S. at 539.

I also find credible Story's testimony that his ankles were not checked on a regular basis and that he was only allowed to shower on one occasion. With respect to the date the leg irons were removed, as noted above, the testimony is contradictory. Sheriff Knighton testified the leg irons were removed on July 7th. The jail shift report indicates the leg irons were removed on July 11th. Delaney testified she prepared the Sheriff's affidavit and if she had to chose between the two dates, July 7th and July 11th, she would go with the date contained in the jail shift report. Delaney on July 8th answered a grievance submitted by Story indicating she had spoken to the nurse and Story's ankles were not swollen. This statement seems to indicate that the leg irons were in fact still on Story on July 8th. Story testified the leg irons were removed on July 25th. Brown testified the leg irons remained on Story until the end of the month.

Sheriff Knighton's testimony was not wholly credible. While testifying he repeatedly indicated an inability to understand or hear the questions posed by Story, however, Sheriff Knighton was observed while seated in the audience to be able to easily converse in hushed or low tones with others. Moreover, as mentioned above, Defendants' records are contradictory as to the date the leg irons were allegedly removed, contain no indication that anyone was checking the leg irons or monitoring Story's health or well-being, and do not indicate the leg irons were removed during any periods of time as suggested by Delaney.

In contrast Story's testimony was credible that he remained in the leg irons until July 25th. Moreover, his testimony was corroborated by that of Brown. Brown in addition noted that Story remained in leg irons constantly even having them on during yard call. The timing of Story's removal from leg irons, as testified to by him, also coincides with the dismissal of the criminal charges against him and his removal from lock down. I therefore conclude the credible evidence establishes Story was in leg irons from July 5th to July 25th.

The issue then becomes what relief Story should be awarded. Compensatory damages under § 1983 are governed by general tort-law compensation theory. *See Carey v. Piphus*, 435 U.S. 247, 255, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978). In *Carey*, the Supreme Court noted that damages are available under § 1983 for actions "found . . . to have been violative of . . . constitutional rights and to have caused compensable injury." *Id.* (internal quotation marks and citations omitted). The law generally provides that damages may be awarded for injuries such as mental anguish and suffering, personal humiliation, and monetary losses. *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 307, 106 S. Ct. 2537, 91 L. Ed. 2d 249 (1986)(citations omitted). However, damages may not be awarded for the abstract or subjective value of the constitutional right at issue. *See Stachura*, 477 U.S. at 308; *Carey*, 435 U.S. at 248.

The generally applicable rules have been altered when it comes to civil rights actions brought by prisoners. Codified as 42 U.S.C. § 1997e(e), section 803(d) of the Prison Litigation Reform Act of 1996 (PLRA) provides as follows: "No Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." *See also Royal v. Kautzky*, 375 F.3d 720,

723 (8th Cir. 2004)(the physical injury requirement of the PLRA "limit[ed] recovery for mental or emotional injury in all federal actions brought by prisoners.").

In this case, Story testified that he suffered physical injury in the form of swollen ankles and feet. When the restraints were taken off, Story testified his feet stayed swollen for several days. Story was seen by the nurse on one occasion. I believe Story has sufficiently satisfied the physical injury requirement of § 1997e(e).

Given the circumstances, I believe the most appropriate method of assessing damages is to utilize a per day basis. Such awards have been used in cases where it was found an inmate's constitutional rights were violated by improper confinement to administrative segregation or solitary confinement. *See e.g., Stevens v. McHan*, 3 F.3d 1204, 1207 (8th Cir. 1993). Similarly, in other cases arising in this district involving the use of a restraint chair a per day amount has been utilized to award compensatory damages. *See e.g., Guerra v. Drake*, 371 F.3d 404 (8th Cir. 2004)($1500 in compensatory damages–representing $500 per day–compensatory damage award not appealed); *Griffis v. Medford*, Civil No. 05-3040, 2008 WL 2945562 (W.D. Ark. July 28, 2008)(compensatory damages in the amount of $600 per day awarded for the twelve days pretrial detainee confined to a restraint chair). Accordingly, I will recommend that Story be awarded damages in the amount of $100 per day for each day he was in leg irons in violation of his Fourteenth Amendment rights. His testimony establishes that he was placed in leg irons on July 5th and removed from leg irons on July 25th–a period of twenty-one days. [1] Accordingly, I will recommend a compensatory damage award

[1] The court may take judicial notice of facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). *See e.g., Horn v. Duke Homes, Div. of Windsor Mobile Homes, Inc.*, 755 F.2d 599 (7th Cir. 1985)(taking judicial notice of the fact that 735 calendar days elapsed between Horn's termination and the judgment in her favor).

of $2100. I will also recommend that the Defendants be required to pay the district court filing fee of $350 (Doc. 3) that has been assessed against Story.

I turn to the question of whether an award of punitive damages is appropriate in this case. An award of punitive damages against the Defendants in their official capacities may not be made. Such an award would be the equivalent of an award against Columbia County and is precluded by the Supreme Court's ruling in *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981).

An award against the Defendants in their individual capacities is appropriate only if serious misconduct by the one or more of the Defendants is shown to exist. *See Smith v. Wade*, 461 U.S. 30, 52, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983). The purpose of punitive damages is to punish the Defendants and/or deter similar conduct in the future. *See Pacific Mutual Life Ins. Co. v. Haslip*, 499 U.S. 1, 19-20, 111 S. Ct. 1032, 1044, 113 L. Ed. 2d 1 (1991). In § 1983 cases it has been said that punitive damages are appropriate “when the defendant’s conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.” *Walters v. Grossheim*, 990 F.2d 381, 385 (8th Cir. 1993)(internal quotation marks and citation omitted).

Having given careful consideration to testimony elicited at the evidentiary hearing, I conclude Story is not entitled to an award of punitive damages. Although Story's Fourteenth Amendment rights were found to have been violated, I do not believe the evidence elicited shows the conduct was motivated by evil motive or intent or involved reckless or callous indifference to Story’s federally protected rights. At most, the testimony of Defendants showed a failure on their part to comprehend

that the use of the leg irons for an extended period of time amounted to punishment of a pretrial detainee in violation of his federal constitutional rights.

**3. Conclusion**

I therefore recommend that Story be awarded compensatory damages in the amount of $2100 against the Defendants. Further, I recommend that the Defendants be required to pay the $350 filing fee that has been assessed against Story.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **16th day of June 2009.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE